NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 26

No. 25-AP-129

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Lamoille Unit, |
| | Criminal Division |
| | |
| Dean A. Lovejoy | April Term, 2026 |

Mary L. Morrissey, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Waples and Drescher, JJ., and Arms, Supr. J.,
             Specially Assigned

¶ 1.    **EATON, J.**    Defendant, Dean Lovejoy, appeals a jury conviction for lewd or lascivious conduct with a child pursuant to 13 V.S.A. § 2602. He makes two arguments on appeal. First, defendant argues that the trial court erred when it denied his motion for acquittal because there was insufficient evidence for conviction. Second, he argues that the trial court erroneously rejected defendant's request for a lesser-included offense jury instruction. We affirm.

¶ 2.    In February 2022, the State charged defendant with lewd or lascivious conduct with a child pursuant to 13 V.S.A. § 2602(a)(1) (prohibiting lewd or lascivious conduct with a child). The information alleged that defendant had "touch[ed] and/or rubb[ed]" his step-daughter J.B.'s buttocks during a period beginning on or about January 2018, when she was nine years old, until December 2019. Following a trial, the jury found defendant guilty in July 2024.

¶ 3. Relevant to the issues on appeal, following the close of the State's evidence, defendant moved for a judgment of acquittal pursuant to Vermont Rule of Criminal Procedure 29. He argued that the State had failed to prove that the conduct was indeed lewd and that the State had put forward no proof of the requisite intent. See 13 V.S.A. § 2602(a)(1) (providing relevant statutory instruction). The court denied defendant's motion for acquittal on the record. Defendant then renewed his argument following his conviction and the court denied his motion once again.

¶ 4. In addition, twice during the trial and then in a post-trial motion, defendant requested that the jury be instructed on the elements of 13 V.S.A. § 2601a(a) (prohibiting "open and gross lewdness") as a lesser-included offense. The court denied defendant's request, concluding that defendant was not entitled to the instruction as § 2601a(a) was not a lesser-included offense of § 2602(a)(1). Following conviction, defendant timely appealed both issues.

I. Sufficiency of the Evidence

¶ 5. Defendant argues that his conviction should be overturned because the State failed to meet its burden of proof. "In a criminal trial, the State is required to prove beyond a reasonable doubt each element of the alleged offense." State v. Anderkin, 145 Vt. 240, 243, 487 A.2d 142, 143 (1984). Relevant to the charge at issue here, a conviction pursuant to 13 V.S.A. § 2602(a)(1) requires the State to prove that defendant

> willfully and lewdly commit[ed] any lewd or lascivious act upon or
> with the body, or any part or member thereof, of a child under the
> age of 16 years, with the intent of arousing, appealing to, or
> gratifying the lust, passions, or sexual desires of such person or of
> such child.

This Court has defined "lewd" behavior as conduct that is "[o]bscene or indecent," "tending to moral impurity or wantonness." In re A.P., 2020 VT 86, ¶ 19, 213 Vt. 291, 246 A.3d 399.

¶ 6. Defendant asserts that touching J.B.'s buttocks was legally insufficient to be considered a "lewd" act under the statute and that there was insufficient evidence to demonstrate

that he acted with the requisite intent to arouse, appeal to, or gratify his or J.B.'s lust, passions or sexual desires.

¶ 7.    "We apply the same standard as the trial court when reviewing a motion for a judgment of acquittal." State v. Cameron, 2016 VT 134, ¶ 5, 204 Vt. 52, 163 A.3d 545. Specifically, "[w]e view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." Id. (quotation omitted).  This is necessarily "a highly deferential standard, which recognizes that neither trial nor appellate courts can place themselves in the jury's position." Id.  Accordingly, we will "grant a judgment of acquittal only when there is no evidence to support a guilty verdict." State v. Davis, 2018 VT 33, ¶ 14, 207 Vt. 346, 186 A.3d 1088 (quotation omitted).

¶ 8.    Further, "[a] jury may draw rational inferences from the circumstantial evidence to determine whether disputed ultimate facts occurred." State v. Perrault, 2017 VT 67, ¶ 30, 205 Vt. 235, 173 A.3d 335 (quotation omitted).  Regarding evidence of intent, we have explained that "[i]ntent may be proven by circumstantial evidence." State v. Downing, 2020 VT 97, ¶ 14, 213 Vt. 643, 245 A.3d 758, as amended (Oct. 29, 2020).  Indeed, "the State need not prove a defendant's mental state directly because we have long recognized that direct evidence of intent is rare; it must be inferred from a person's acts." State v. Bourgoin, 2021 VT 15, ¶ 8, 214 Vt. 483, 254 A.3d 217 (quotation omitted); see also State v. Cole, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988) ("Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence.").

¶ 9.    The record indicates that the State introduced the following evidence regarding defendant's actions and intent.  Beginning in 2018, J.B. described that when she would get into the car with defendant alone, "a few minutes later, his hand would be on [her] leg.  On [her] thigh." She explained that his hands would then "move down to [her] knees or sometimes on [her] hips."

3

¶ 10.    J.B. also testified that, during her nightly routine, defendant would join her on the couch to watch television.  Beginning in 2018, defendant "would, after a little while, start inching his way closer to [her] until the point where he could reach [her]."  According to J.B., once defendant had moved close enough, "[h]e would reach his hand over and grasp [her] thighs and legs, and then he would stick his hands down [her] pants," and, specifically, "[h]e would put his hand down the back of [her] pants down and just rub and squeeze, grab [her] butt."  J.B. clarified that this was under both her pants and underpants.  She also described that defendant acted in this way "multiple times throughout multiple months . . . [b]etween the two years, 2018 and 2019" and she approximated that it occurred "about three or four times a week."  J.B. explained, when her mother would approach the room, defendant "would pull his hand out of my pants and jerk back to a comfortable sitting position for him that looked normal."

¶ 11.    J.B. testified that, as a result of the contact, "[she] felt scared" and "very terrified" because she "didn't really know what was happening."  She also explained that she waited a number of years to come forward because "[she] was scared, and [she] felt like [her] household really was going to fall apart without [defendant]."

¶ 12.    In an interview with an investigating officer, defendant initially denied that he had touched J.B.  Upon further questioning, however, defendant described that he had touched J.B.'s foot and her back, and then, later, admitted that he touched her "on her butt, and then around to the sides."  Defendant also later admitted that he had touched her leg while riding home from school in the car.  The interviewing officer testified that when defendant was asked how the touching made defendant feel, he initially "would just use the word comfort."  The officer stated that defendant later asserted that "this was a way for him to be there for [J.B.]"

¶ 13.    In response to a question from the officer specifically about touching J.B.'s buttocks, defendant replied that it made him feel "terrible."  Defendant admitted that "he stopped it because [J.B.] felt like a daughter to him" and that he was not "like this" and he "shouldn't do

4

this." Additionally, defendant told the officer that defendant had stopped "because it wasn't right" and that "[defendant] knew what he did was wrong." Defendant also acknowledged during his testimony at trial that he had told the officer that he had felt that the touching was wrong in the moment and answered in the affirmative to a question asking whether he felt like he was crossing a boundary. Defendant, however, denied being aroused by his conduct and denied trying to arouse J.B.

¶ 14. On appeal, defendant continues to assert that his touching J.B. was solely to comfort her. When asked about his other children—his three sons—defendant testified at trial that he had also comforted and been affectionate towards them. He described that he would give them hugs and kisses, rub their backs, and have his hands on their bottoms. However, defendant also conceded that, unlike his conduct with J.B., he had only touched his sons' bottoms when they were infants and had stopped when they had turned three or four.

¶ 15. We have explained that "evidence of the motive of sexual gratification" need not "be explicit and direct." State v. Welch, 159 Vt. 272, 276, 617 A.2d 427, 430 (1992). Instead, "[s]uch evidence may be, and almost invariably is, circumstantial, and a motive of gratifying lust, passions or sexual desires can be inferred from the circumstances." Id. (quotation and alteration omitted). Indeed, "[t]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent." State v. Squiers, 2006 VT 26, ¶ 11, 179 Vt. 388, 896 A.2d 80 (quotation omitted). Circumstances can include the defendant's "statements, other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection." Id. (quotation omitted).

¶ 16. In this case, there is sufficient evidence from which a jury could rationally infer beyond a reasonable doubt that defendant intended to gratify his lust, passions or sexual desires when he "touch[ed]," "rub[bed]," "squeeze[d]," and "grab[bed]" J.B.'s buttocks. In sum, in 2018

to 2019 defendant frequently touched J.B.'s buttocks beneath both her pants and underwear. During that time, defendant took affirmative steps to only touch J.B. when defendant was alone with her, to avoid detection, and to conceal that touching—first from mother, and later, from the police. Finally, defendant admitted on multiple occasions that the touching was "wrong," "wasn't right," was "uncomfortable," was "crossing a boundary," and that the defendant knew he "shouldn't do this" and stopped because J.B. "felt like a daughter to him."

¶ 17. Furthermore, defendant's admission that he did not touch any of his other children in a similar way supports the conclusion that defendant's actions towards J.B. were lewd in nature and not made with the intent of typical family contact. This admission therefore supports the jury's conclusion that defendant performed a lewd act and did so with the required intent.

¶ 18. Defendant argues that, despite the evidence explained above, the State has failed to meet its burden because the State presented no contemporary evidence of statements by defendant that indicated the requisite intent. See Squiers, 2006 VT 26, ¶ 12 (reasoning that defendant's "accompanying comments reveal that his intent when pressing against his granddaughter's breasts and running his hand up her leg near her groin was expressly lewd, as opposed to innocent or accidental"). However, contemporary statements concerning intent, while relevant, are not required. See State v. Caballero, 2022 VT 25, ¶ 18, 216 Vt. 406, 279 A.3d 676 ("The requisite intent may be inferred from the defendant's acts as well as circumstantial evidence.").

¶ 19. Indeed, in State .v Hoch, we affirmed a trial court's decision to deny a motion for acquittal where the only evidence of contemporaneous statements were that the defendant "told [the victim] not to tell her mother about the touching." 2011 VT 4, ¶ 13, 189 Vt. 560, 18 A.3d 562 (mem.). Other evidence in that case demonstrated that the defendant frequently touched the victim's bare bottom, gave her gifts of money, and "showed up at the apartment at times of day when he knew her mother was napping in an obvious effort to find [the victim] unsupervised." Id.

6

Evidence in this case demonstrates both near-identical touching and similar attempts to avoid detection.

¶ 20.   Finally, defendant argues the evidence demonstrates that, on multiple occasions, he denied ever being aroused and denied trying to arouse J.B.  While defendant did indeed testify that his intent was to console J.B., the applicable standard of review here requires us to consider only the evidence taken in the light most favorable to the State and does not require us to consider modifying evidence—including defendant's countervailing testimony.  State v. Gibney, 2003 VT 26, ¶ 14, 175 Vt. 180, 825 A.2d 32.

¶ 21.   Accordingly, the trial court did not err in denying defendant's motion for acquittal.

## II.  Lesser-Included-Offense Instruction

¶ 22.   Defendant asserts the trial court erred when it declined to include an instruction on 13 V.S.A. § 2601a(a), entitled "prohibited conduct," as a lesser-included-offense of 13 V.S.A. § 2602(a)(1), entitled "lewd or lascivious conduct with a child."  We disagree.

¶ 23.   "If requested by either party, the jury shall be informed of the lesser included offense if supported by the evidence."  13 V.S.A. § 14(a); see State v. Delisle, 162 Vt. 293, 301, 648 A.2d 632, 637 (1994) ("As a general rule, a criminal defendant is entitled to have the jury instructed on all lesser-included offenses.").  "A lesser-included offense is one that is composed exclusively of elements shared with the greater, charged offense but also lacks at least one element of that greater, charged offense."  State v. Bean, 2016 VT 73, ¶ 7, 202 Vt. 361, 149 A.3d 487.  In other words, an offense will be treated as a lesser-included offense only if proof of the greater offense necessarily means the lesser offense has also been proven.  See State v. Corliss, 168 Vt. 333, 338, 721 A.2d 438, 443 (1998) (explaining "an offense will be treated as a lesser-included offense only if each of its elements is always a necessary element of the greater offense" (quotations omitted)).  Accordingly, the Court must compare "statutory elements to determine whether a lesser offense will be charged" and if "any element in the lesser offense [is] not

contained in the greater offense [this] defeats the obligation to instruct the jury on the lesser offense." State v. Russo, 2004 VT 103, ¶ 21, 177 Vt. 394, 864 A.2d 655.

¶ 24. We begin with the plain language of the statutes at issue. We have described that the elements of § 2602(a)(1) are that the defendant "(1) willfully and lewdly; (2) committed any lewd or lascivious act; (3) upon or with the body of a child under the age of sixteen years; (4) with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child." State v. Beaudoin, 2008 VT 133, ¶ 32, 185 Vt. 164, 970 A.2d 39; see also 13 V.S.A. § 2602(a)(1). In contrast, § 2601a(a) requires that "[n]o person shall engage in open and gross lewdness." We conclude that § 2601a(a) is not a lesser-included offense of § 2602(a)(1) because § 2601a(a) requires the showing of elements that are not necessary for a conviction under § 2602(a)(1).

A. Conviction Under § 2602(a)(1) Requires Either Lewd or Lascivious Act, Not Both

¶ 25. Section 2602(a)(1) requires that "[n]o person shall . . . commit any lewd <u>or</u> lascivious act" (emphasis added). This plain language indicates that a defendant may be convicted under § 2601 upon a showing of a solely lascivious act.

¶ 26. "[T]o discern legislative intent, we first look to the plain language of the statute." State v. Hale, 2021 VT 18, ¶ 9, 214 Vt. 296, 256 A.3d 595 (quotation omitted). The Legislature could have used the word "and" in § 2602(a)(1)—as it did in § 2601, which prohibits "lewd and lascivious conduct"—but it did not. Instead, the language in § 2602(a)(1) explicitly uses the term "or"; and we must "presume the Legislature used [this statutory] language advisedly." State v. DeRosa, 161 Vt. 78, 80, 633 A.2d 277, 279 (1993). Thus, by use of the term "or" the Legislature clearly indicated that proof of a lewd act is not strictly necessary for a conviction pursuant to the statute.[1]

---

[1] It is true that both this Court and trial courts have misquoted the statute by using the phrase "lewd and lascivious." See, e.g., State v. Hiltl, 2021 VT 60, ¶ 42, 215 Vt. 305, 261 A.3d 1148 (describing and citing statute as prohibiting "lewd and lascivious conduct with a child").

8

¶ 27. Furthermore, the structure of the surrounding statutes supports the conclusion that the Legislature intended that "lewd" and "lascivious" have distinct meanings. Section 2601 is a felony and prohibits "open and gross lewdness and lascivious behavior" and restricts imprisonment to no more than five years. (emphasis added). In contrast, § 2601a(a) is a misdemeanor and prohibits only "open and gross lewdness" and § 2601a(b)(1) restricts imprisonment to no more than one year for a first offense. Accordingly, the inclusion of the required "lascivious" behavior and heightened penalty in § 2601—compared to the misdemeanor outlined in § 2601a(a)—creates a distinction between conduct that is merely lewd and conduct that is also lascivious. See State v. Phillips, 2018 VT 85, ¶ 17, 208 Vt. 145, 195 A.3d 1099 (explaining that elements of §§ 2601 and 2601a(a) are not equivalent). Without a distinction between the two terms, there would be no need for separate crimes and no justification for heightened punishment under § 2601. See In re A.P., 2020 VT 86, ¶ 58 (Robinson, J., dissenting) (stating "[the] statutory structure creates a hierarchy of conduct, where behavior that is lascivious, or which involves a child, is subject to more severe penalties").

¶ 28. This Court has also specifically acknowledged that the terms "lewd" and "lascivious" carry different meanings. In In re A.P., the defendant argued that it was impossible to distinguish felony "lewdness and lascivious" behavior under § 2601 from misdemeanor "lewdness" under § 2601a(a). 2020 VT 86, ¶ 16.

¶ 29. The Court considered multiple definitions of "lewd" and "lascivious" and concluded that while the definitions of each were broad and there was some overlap between them,

Courts have also defined the terms together. In State v. Penn, we approved of the trial court's jury instruction that "lewd and lascivious behavior means behavior that is sexual in nature, lustful, or indecent, that which offends the common social sense of the community, as well as its sense of decency and morality." 2003 VT 110, ¶ 12, 176 Vt. 565, 845 A.2d 313 (mem.) (quotation marks omitted). However, this does not and should not affect our analysis of the plain language in the statute. See State v. Stell, 2007 VT 106, ¶ 12, 182 Vt. 368, 937 A.2d 649 ("Our goal is to implement the Legislature's intent and the definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear." (quotation and alteration omitted)).

"they [were] not identical." Id. ¶¶ 19-20. Specifically, the Court described that "[t]he primary definition of 'lascivious' in Black's Law Dictionary is 'tending to excite lust' " and that "Merriam-Webster defines 'lascivious' as 'filled with or showing sexual desire.' " Id. ¶ 19 (citing Lascivious, Black's Law Dictionary (11th ed. 2019) and Lascivious, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/5PWC-LGPY]). The Court contrasted these definitions of "lascivious" with definitions of "lewd." Once again looking to dictionary definitions, the Court explained that Black's Law Dictionary defined "lewd" as " '[o]bscene or indecent; tending to moral impurity or wantonness' " and that Merriam-Webster defined it as "obscene, vulgar." Id. (citing Lewd, Black's Law Dictionary (11th ed. 2019) and Lascivious, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/Y5H8-SNKU]). The Court noted that each of these cited dictionary definitions listed "lewd" as a cross-reference to "lascivious," but highlighted that "the primary definitions of the words are different." Id.

¶ 30. Accordingly, we conclude that because the State need only prove that defendant committed a lascivious act under § 2602(a)(1), § 2601a(a)—which requires proof of lewdness—is not a lesser-included offense of § 2602(a)(1).[2] This, alone, is sufficient to determine that the

_____

[2] Defendant and the concurrence point out that § 2602(a)(1) requires that the lewd or lascivious act be committed "lewdly." 13 V.S.A. § 2602(a)(1) ("No person shall willfully and lewdly commit any lewd or lascivious act"). According to defendant and the concurrence, this requirement necessarily means that any lascivious act must also be a lewd act under the statute. We disagree. The inclusion of the adverb "lewdly" to the statute, does not and should not transform the plain meaning of "lewd or lascivious" in § 2602(a)(1) into the more restrictive term: "lewd and lascivious" conduct. See DeRosa, 161 Vt. at 80, 633 A.2d at 279 ("[W]e presume the Legislature used the [statutory] language advisedly."). To do so would run counter to the Legislature's intent. See Beaudoin, 2008 VT 133, ¶ 38 ("[T]he plain language of § 2602(a)(1) indicates that the statute is aimed at preventing the sexual exploitation of children."); cf. In re H.H., 2020 VT 107, ¶ 26, 214 Vt. 1, 251 A.3d 560 (explaining "this particular statutory language must be liberally construed to effectuate the law's purpose, which is to provide for the welfare of children" (quotation omitted)). Therefore, we must conclude that the Legislature understood that an individual could lewdly commit a lewd act or lewdly commit a lascivious act.

Indeed, the "lewdly" language of § 2602(a)(1) pertains to the manner in which the offender commits the act, not whether the act itself is lewd or lascivious. See Lewdly, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/GHS6-G5BJ] (categorizing "lewdly" as adverb and defining it as "in a lewd manner"). While it may be difficult to conceive of a lewdly

trial court did not err when it declined to instruct the jury on § 2601a(a) as a lesser-included offense.

## B. Section 2602(a)(1) Does Not Require Proof of "Open" and "Gross" Act

¶ 31.    Defendant argues § 2602(a)(1) subsumes all of the required elements in § 2601a(a), and that, as a result § 2601a(a) is a lesser-included offense.  Once again, we disagree.

¶ 32.    This Court addressed a similar argument in State v. Beaudoin.  2008 VT 133, ¶ 30. In that case, the defendant argued that the trial court erred when it did not instruct the jury that 13 V.S.A. § 2632(a)(8) (prohibiting "engaging in prostitution, lewdness, or assignation") was a lesser-included offense of § 2602(a)(1).  Id. ¶ 30.  Importantly, § 2632(a)(8) prohibits a person from engaging in "lewdness" and, for the purpose of the relevant subchapter, § 2631(2) instructs that "[t]he term 'lewdness' shall be construed to mean open and gross lewdness."  This Court compared the language in § 2631(2)—requiring the lewdness to be "open and gross"—with the language in § 2602(a)(1) describing that a defendant could be convicted for "<u>any</u> lewd or lascivious act." Beaudoin, 2008 VT 133, ¶¶ 33-34.  We determined that "[t]he inclusion of the word 'any' before the term 'lewd or lascivious act' convey[ed] that the Legislature did not intend to require that the State prove that the lewd [or lascivious] act was open and gross."[3]  Id. ¶ 34.

---

done lascivious act that is not also lewd, we do not pretend to be able to conceive of every act that would be lascivious and "tend[] to excite lust" in a future defendant.  See In re A.P., 2020 VT 86, ¶ 19 (defining "lascivious" as "tending to excite lust").  We will also not attempt to conceive of all of the acts that may appear benign or not lewd but whose context indicate that they are done lewdly—or in a manner that could be considered obscene or indecent once that context is established.  See Penn, 2003 VT 110, ¶ 12 (deferring to "common sense of the community" when interpreting definitions of "lewd" and "lascivious" in § 2601).  Consequently, we decline to deviate from the plain meaning of the statute as written and will not restrict the "lewd or lascivious" conduct requirement as defendant and the concurrence suggest.

[3]    The Court also rejected the argument that the definition of lewdness contained in § 2631(2) applied to § 2602(a)(1).  Beaudoin, 2008 VT 133, ¶ 36.  Defendant does not contest this conclusion in the current appeal.

¶ 33. While the analysis in <u>Beaudoin</u> concerned § 2632(a)(8) and not § 2601a(a), the analysis remains relevant. See <u>id</u>. Indeed, the material language in two relevant statutes is identical.[4] As described above, together § 2632(a)(8) and § 2631(2) prohibit engaging in "open and gross lewdness." Similarly, § 2601a(a) states that "[n]o person shall engage in open and gross lewdness." The comparison between language requiring an "open and gross" act and the language in § 2602(a)(1) allowing proof of "any" act remains relevant.

¶ 34. Accordingly, we reaffirm the reasoning in <u>Beaudoin</u> that "if the Legislature had intended the State to prove under § 2602[(a)(1)] that a defendant's lewd acts against a child were open and gross, it would have expressly stated so." 2008 VT 133, ¶ 33. And, conversely, if the "any"-act requirement in § 2602(a)(1) implicitly required a showing that the act was "open and gross," there would have been no need to explicitly include those requirements in § 2601a(a). See <u>State v. Morrill</u>, 2025 VT 19, ¶ 12, __ Vt. __, 336 A.3d 430 ("[W]e will avoid a construction that renders any portion of a statute ineffective or superfluous."(quotation omitted)).

¶ 35. Thus, we once again conclude that the Legislature's inclusion of the word "any" before the term "lewd or lascivious act" in § 2602(a)(1) "conveys that the Legislature did not intend to require that the State prove that the lewd act was open and gross," and therefore, that § 2601a(a)—which requires such proof—is not a lesser included offense of § 2602(a)(1). <u>Beaudoin</u>, 2008 VT 133, ¶ 34; see also <u>Russo</u>, 2004 VT 103, ¶ 17 (explaining court is not obligated to instruct jury on lesser offense where lesser offense has element not contained in greater offense).

---

[4] Defendant points to cases where this Court explicitly articulated that § 2632(a)(8) prohibited lewd acts within the prostitution context. See, e.g., <u>In re K.A.</u>, 2016 VT 52, ¶ 25, 202 Vt. 86, 147 A.3d 81 ("K.A. did not commit a delinquent act of prostitution. The use of § 2632 in this case is an example of prosecutorial discretion gone awry."). We do not believe that these decisions disturb our analysis here based on the plain language of the statute. The Legislature could have elected to use different language to require a different outcome of this Court; but it did not. See <u>State v. Read</u>, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996) ("[W]e presume that the Legislature makes changes in the law in light of relevant judicial precedents and with knowledge of prior legislation on the same subject.").

¶ 36. Defendant argues that lewd or lascivious conduct with a child in § 2602(a)(1) is inherently "open and gross" based on this Court's definition of the two terms. According to defendant, as a result, all of the elements of § 2601a(a) are subsumed within § 2602(a)(1), making it a lesser-included offense. We disagree.

¶ 37. In support of his argument that the language "any lewd or lascivious act" in § 2602(a)(1) would necessarily be "open," defendant points to this Court's broad definition of the term. Indeed, this Court has defined the term "open and gross" to connote an act that is "neither disguised nor concealed," State v. Memoli, 2011 VT 15, ¶ 33, 189 Vt. 237, 18 A.3d 567 (quotation omitted), and more specifically, this Court has stated that "[c]onduct meets the statutory requirement of 'openness' if it is done in the presence of at least one other witness," State v. Discola, 2018 VT 7, ¶ 20, 207 Vt. 216, 184 A.3d 1177. Accordingly, we have affirmed convictions pursuant to statutes requiring an "open" act when the victim was the sole witness. See, e.g., In re A.C., 2012 VT 30, ¶ 21, 191 Vt. 615, 48 A.3d 595 (mem.) (affirming conviction pursuant to § 2632(a)(8)—requiring State to prove "open and gross" lewdness—because defendant's "actions were open in that they were witnessed by [victim]"); In re A.P., 2020 VT 86, ¶ 10 (affirming conviction pursuant to § 2601—requiring State to prove "open and gross lewd and lascivious behavior"—reasoning act at issue was witnessed by complainant, among other considerations, which was "enough to render the act 'open' under the meaning of the statute, even though no one other than complainant witnessed it").

¶ 38. This broad definition of an "open" act, however, does not nullify the distinction between "any" lewd or lascivious act in § 2602(a)(1) and the requirement for an "open" act in § 2601a(a). When addressing a similar argument in Beaudoin, we described that "the plain language of § 2602[(a)(1)] indicates that the statute is aimed at preventing the sexual exploitation of children, irrespective of whether that exploitation is done openly or secretly." 2008 VT 133, ¶ 38. We reasoned that "to hold otherwise would create absurd results, such as allowing the sexual

13

exploitation of children who 'consented' to the offensive conduct or who were asleep or unconscious when the offense occurred." Id. Thus, by omitting an "openness" requirement in § 2602(a)(1), the Legislature demonstrated its intent to allow conviction of lewd or lascivious acts that are committed against children but are not necessarily "open"—for example, acts that are not "witnessed" in the traditional sense. Cf. Penn, 2003 VT 110, ¶ 13 (highlighting that punishable conduct against unconscious woman was observed and witnessed by her daughter when affirming conviction pursuant to § 2601); State v. Benoit, 158 Vt. 359, 361, 609 A.2d 230, 231 (1992) (upholding conviction under § 2601, highlighting that witness observed naked body of sleeping child whom defendant had undressed).

¶ 39.    Similar reasoning applies to the Legislature's use of the term "gross" in § 2601a(a) and the absence of that language in § 2602(a)(1). We have defined the term "gross" to mean "patently offensive." In re A.P., 2020 VT 86, ¶¶ 5, 11; see also In re A.C., 2012 VT 30, ¶ 21 (describing conduct as "gross," reasoning it was "patently offensive and known to be patently offensive to any law-abiding person in [the defendant's] situation"). In In re A.P., we explained that by including the term "gross," the Legislature intended to prohibit "only acts of lewdness that would cause serious offense or harm to a reasonable witness" and not "arguably 'lewd' acts that a reasonable individual would find inoffensive or only mildly offensive." 2020 VT 86, ¶ 12 (interpreting § 2601). As above, the Legislature's use of the term "any" in § 2602(a)(1) indicates its intention that even those "mildly offensive" or even "inoffensive" lewd acts could be qualifying conduct under the statute.[5] This broad description of lewd or lascivious acts prohibits children from being used for sexual gratification irrespective of whether the conduct might seem "gross" or patently offensive to a reasonable person. See Beaudoin, 2008 VT 133, ¶ 38 ("[T]he plain

---

[5] We emphasize that the intent requirement in § 2602(a)(1) would preclude conviction for mildly offensive or inoffensive lewd acts that were not committed with the "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the defendant or a] child." See Squiers, 2006 VT 26, ¶ 12 (quotation omitted) (explaining sometimes "a hug is just a hug, and a touch on the leg is just a touch on the leg").

14

language of § 2602[(a)(1)] indicates that the statute is aimed at preventing the sexual exploitation of children . . . .").

¶ 40.	Consequently, as above, because § 2601a(a) contains an element that is not contained in § 2602(a)(1)—a "gross" act—§ 2601a(a) cannot be a lesser-included offense of § 2602(a)(1).  See Russo, 2004 VT 103, ¶ 17 (explaining court is not obligated to instruct jury on lesser offense where lesser offense has element not contained in greater offense).

¶ 41.	Defendant argues that the history of the legislative changes to the relevant statutes prohibiting lewd conduct supports his argument that § 2601a(a) is a lesser-included offense of § 2602(a)(1).  According to defendant, the Legislature enacted § 2601a(a) in response to this Court's decision in In re K.A.  2016 VT 52, ¶ 21 (explaining legislative history and chapter organization "lead inescapably to the conclusion that" subchapter and chapter containing § 2632(a)(8) "specifically governs the procurement or solicitation of a person for the purpose of prostitution" and not "obnoxious and unwelcome touching on the playground").  Defendant supports his argument by pointing out that the Legislature codified § 2601a the year after this Court published In re K.A.  See 2017, No. 44, § 1 (codifying 13 V.S.A. § 2601a in 2017); In re K.A., 2016 VT 52 (listing date of publication as April 2016).

¶ 42.	We believe the relevant history supports the opposite conclusion.  When the Legislature codified § 2601a(a), it purposefully incorporated the same terms used in § 2631(2): "open and gross."  See DeRosa, 161 Vt. at 80, 633 A.2d at 279 ("[W]e presume the Legislature used the language advisedly.").  Accordingly, the reasoning in Beaudoin—grounded in an analysis of the plain meanings of the terms used by the Legislature—is applicable.[6]  If the Legislature

---

[6] We are unpersuaded by defendant's argument that Beaudoin is no longer relevant because it concerned § 2632(a)(8).  See 2008 VT 133, ¶ 30 (describing issue as whether § 2632(a)(8) was lesser-included offense of § 2602(a)(1)).  There is identical material language in both § 2632(a)(8), which incorporates the definition in § 2631(2), and § 2601a(a).  Compare 13 V.S.A. § 2601a(a) (prohibiting "open and gross lewdness") with 13 V.S.A. § 2632(a)(8) (prohibiting "lewdness" with "lewdness" defined by § 2631(2) as "open and gross lewdness").  Where this Court applies a plain-meaning analysis to identical wording used by the Legislature, an identical result is required,

15

understood the "any" act requirement in § 2602(a)(1) to require a showing that the act was open and gross, as defendant argues, there would have been no need to explicitly include those requirements when it codified § 2601a(a).  See Morrill, 2025 VT 19, ¶ 12 ("We will avoid a construction that renders any portion of a statute ineffective or superfluous." (quotation omitted)); Beaudoin, 2008 VT 133, ¶ 33 ("[I]f the Legislature had intended the State to prove under § 2602[(a)(1)] that a defendant's lewd acts against a child were open and gross, it would have expressly stated so, as it did in §§ 2601, 2631(2), and 2632(a)(8).").  Finally, the reasoning associated with the Legislature's intent concerning § 2602(a)(1) also remains relevant.  Specifically, in Beaudoin we articulated that "it is entirely rational for the Legislature to require proof of open and gross conduct when generally criminalizing lewd behavior, but not to require such proof when criminalizing sexually motivated conduct against children."  2008 VT 133, ¶ 37.

¶ 43.  We are similarly unpersuaded by defendant's argument that the reasoning in Beaudoin related to the statutory scheme is relevant to our analysis.  Specifically, defendant quotes Beaudoin for the proposition that "[t]he organization of chapter 59 further supports [the conclusion that § 2632(a)(8) was not a lesser-included offense of § 2602(a)(1)]" and argues that "a significant part of this Court's reason for considering openness a distinct element . . . had to do with its origin as a statute meant to penalize public prostitution."  The Court made it clear in Beaudoin that its analysis of the statutory scheme was merely in "support" of its ultimate conclusion, which was based on the plain meaning of the terms used.  2008 VT 133, ¶ 35 (explaining "[t]he organization of chapter 59 further supports this conclusion" (emphasis added)).  Consequently, the Court's

_____

absent modifying circumstances not present here.  Cf. Notte v. Rutland R. Co., 112 Vt. 305, 308, 23 A.2d 626, 627 (1942) ("When in a later act, on the same general subject matter, the Legislature makes use of a particular word or form of words which the courts have construed, it is to be presumed, in the absence of anything to the contrary, that it used such words in the sense attributed to them by such construction.").  Had the Legislature intended a different outcome or a different analysis from the one outlined in Beaudoin, it would have used different terms in § 2601a(a).

16

plain-meaning analysis remains relevant and unchanged by the additional reasoning cited by defendant.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 44. **DRESCHER, J., concurring.** I join the majority opinion except insofar as it posits in Part II.A. the existence of a lascivious act that violates 13 V.S.A. § 2602(a)(1) that is not also lewd. Ante, ¶¶ 30, 30 n.2. While the statute requires only a "lewd or lascivious act," it also requires the act be committed "willfully and lewdly," "upon or with the body" of a child, and "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of the offender or the child. 13 V.S.A. § 2602(a)(1). Without foreclosing the possibility that one may exist, I cannot conceive of a willfully and lewdly done lascivious act satisfying the other elements of the offense that is not also obscene, vulgar, and indecent—or, in other words, lewd. See In re A.P., 2020 VT 86, ¶ 19, 213 Vt. 291, 246 A.3d 399 (setting forth definitions of lewdness). Moreover, in my view it is unnecessary to decide this question because defendant's lesser-included-offense argument fails for the reasons expressed in Part II.B. of the opinion.

_____
Associate Justice

17